# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| VINCENT RODRIGUEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:09-CV-336- JVB |
| CAVITEC AG, CAVITEC AG IN , ) | |
| LIQUIDATION, SANTEX AG, SANTEX AG ) | |
| d/b/a CAVITEC/SANTEX NONWOVEN, and ) | |
| SANTEX NONWOVEN, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Vincent Rodriguez, an employee of Vita Non-Wovens in Fort Wayne, Indiana, was injured on October 17, 2007, when his left hand was pinched and crushed while feeding heated fiber sheets from Santatherm ovens to Santabond calendar rollers. On September 24, 2009, Plaintiff filed his Complaint (DE 1) alleging negligence and products liability claims against all named Defendants. The present matter is Defendant Santex AG's Motion to Dismiss (DE 23) for lack of personal jurisdiction.

**A.  Background**

Plaintiff was employed as a "winderhead" at Vita Non-Wovens in Fort Wayne, Indiana, prior to his injury. (DE 20, Am. Compl. ¶ 4.) On October 17, 2007, Plaintiff was working in the transition area of the Santatherm oven facing the calendar rollers. (DE 20, Am. Compl. ¶ 5.) As part of his job duties, Plaintiff would take heated fiber sheets from the Santatherm heating oven and place it between two calendar rolls that fed into a cooling oven and slitter. (DE 20, Am.

Compl. ¶ 4.) During the manufacturing process, the calendar rolls and conveyors were in continuous motion. (DE 20, Am. Compl. ¶ 5.) On they day in question, while feeding the fiber sheet into the rollers, Plaintiff's left hand became pinched and crushed between the calendar rollers. (DE 20, Am. Compl. ¶ 5.) The injury resulted in a partial amputation of his left index finger, loss of use of his left index and middle finger, and other damages and permanent injuries including medical expenses.(DE 20, Am. Compl. ¶ 7.) On September 24, 2009, Plaintiff filed an Amended Complaint arguing that the Santatherm oven and transition area are defective and dangerous and asserting products liability and negligence claims against Defendants. (DE 20, Am. Compl. ¶ 6.)

Cavitec AG, Santex AG, Santex AG d/b/a/ Cavitec/Santex Nonwoven, and Santex Nonwoven are wholly-owned subsidiaries of Santex Holding AG, which is organized and operated out of Switzerland. (DE 5.) Prior to October 17, 2007, Cavitec AG, now Cavitec AG in Liquidation, had its principal place of business in Munchwilen, Switzerland. (DE 20, Am. Compl. ¶ 1.) During the time in question, Cavitec AG was involved in the design, manufacture, selling, distribution, and assembly of the Santatherm ovens and Santabond calendars, including those installed in Fort Wayne, Indiana. (DE 20, Am. Compl. ¶ 1.) Cavitec AG was also responsible for the development, production, manufacturing, distribution, delivery, and assembly of the transition area between the Santatherm heating and cooling ovens. (DE 20, Am. Compl. ¶ 3.) Additionally, Cavitec AG was aware that the Santatherm oven was being delivered and installed in the United States in facilities similar to that in Vita Non-Wovens. (DE 20, Am. Compl. ¶ 12.) The Santatherm oven was purchased by Vita Non-Wovens on January 16, 2003, for 1,133,187 Euros. The principal place of business of Santex AG was at that time and remains

still in Tobel, Switzerland.(DE 20, Am. Compl.¶ 2.)

Defendant Santex AG filed a Motion to Dismiss for lack of personal jurisdiction on March, 8, 2010. Because the parties dispute facts that are essential to establish the Court's jurisdiction over Santex AG, an evidentiary hearing is necessary to determine if it has jurisdiction.

**B.      Facts At Issue**

**(1)**   *Plaintiff's Allegations*

Plaintiff asserts that during the time at issue, Santex AG, d/b/a/ Cavitec/Santex Nonwoven and Santex Nonwoven were involved in the design, manufacture, selling, distribution, and assembly of the Santatherm ovens and Santabond calendars, including those installed in Fort Wayne, Indiana. (DE 20, Am. Compl. ¶ 2.) Additionally, plaintiff contends that Santex AG was involved in the development, production, manufacturing, distribution, delivery, and assembly of the transition area between the Santatherm heating and cooling ovens and had knowledge of their placement in facilities in the United States similar to that in Vita Non-Wovens. (DE 20. Am. Compl. ¶¶ 3,12.) Plaintiff alleges that both Cavitec AG and Santex AG knew of the defects in the oven and transition area but failed to disclose them, and this was the direct and proximate cause of Plaintiff's injuries. (DE 20, Am. Compl. ¶ 16.)

In support of these assertions, Plaintiff offers the Purchase Order which states: "Security interest in the equipment is retained by Santex AG until paid in full." (DE 27-1.) Plaintiff contends that this establishes that it was Santex AG, not Cavitec AG, that retained a security interest in the oven as well as "the right to file UCC form with the applicable state and / or

3

county offices which also requires a sales and security agreement and note be signed" and therefore meets the minimum contacts requirement. (DE 27-1.) Furthermore, plaintiff contends that by retaining a security interest, Santex AG ratifies and authorizes the sale of the oven and arguably is its true owner. (DE 27, Pl.'s Resp. 6.) The authenticity of the purchase order is verified by W. Jason Johnson, Vice President of Operations at Vita Non-Wovens.[1] (DE 27-3, Johnson Aff. ¶ 3.)

Additionally, Plaintiff presents a printout discussing Cavitec AG's company history from Cavitec AG's official website where it states that "Cavitec/Santex Nonwoven are since beginning of 2004, a Business Unit within Santex AG."[2] (DE 27-5.) Also taken from Cavitec AG's website, Plaintiff provides a printout of Cavitec AG's contact information, which places it at the same address as Santex AG.[3] (DE 27-6.) The Chief Financial Office of Santex AG is also the Liquidator of Cavitec AG. (DE 27, Pl.'s Resp. 7). Plaintiff asserts that this establishes that Santex AG is aware of Cavitec AG/Santex Nonwoven, and that Santex AG's affidavit by Alois Schoenenberger countering this should be struck for offering mere legal conclusions. (DE 27, Pl.'s Resp. 6.)

Johnson verifies that engineers from Santex AG, in addition to Cavitec AG and Santex Nonwoven, came to Vita Non-Woven to supervise and assist in the instillation of the Santatherm oven and transition area. (DE 27-3, Johnson Aff. ¶ 5.) Plaintiff also offers the Purchase Order,

---

[1] In the W. Jason Johnson Affidavit, Vita Non-Wovens is referred to as "VitaNonwovens" and "VitaNowovens" and "Vita Nonwovens." The Court will use "Vita Non-Wovens" as is used in the Plaintiff's Amended Complaint.

[2] This information is taken from Http://www.cavitec.ch/en_php/company.php

[3] This information is taken from http://www.cavitec/en_php/service.php

4

which states that "[a]ll Santex Engineers will be able to speak fluent English and have experience with this kind of machinery" demonstrates that not only Cavitec AG but also Santex AG engineers provided services in Indiana. (DE 27-2; DE 27, Pl.'s Resp. 7.) Plaintiff asserts that in light of the considerable cost of the oven, Santex AG's contact is not attenuated, but established by a substantial sale. (DE 27, Pl.'s Resp. 6). Accordingly, Santex AG should reasonably anticipate the possibility of being haled into court in Indiana.

Plaintiff concludes by asserting that there is, if not a clear finding of personal jurisdiction, at least a genuine issue of fact regarding the role of Santex AG and asks that further discovery should be allowed to determine if specific jurisdiction exists. (DE 27, Pl's Resp 8.)

**(2)** *Defendant Santex AG's Allegations*

Denying all allegations of fault by Plaintiff, Santex AG contends that it is an entirely separate entity from all other named defendants and has no involvement with the manufacture, sale, or distribution of the oven at issue. (DE 24, Santex AG Br. 1-2.) Alois Schoenenberger, the Chief Financial Officer of Santex AG, asserts that Santex AG and Cavitec AG are distinct legal entities that produce entirely separate products. (DE 24-1, Schoenenberger Aff. ¶ 6, Feb. 2, 2010) Furthermore, he contends that the company is unaware of the existence of "Santex AG d/b/a Cavitec/Santex Nonwoven" or "Santex Nonwoven" and that neither are located at Santex AG's principal place of business, where service for both was made. (DE 24-1, Schoenenberger Aff. ¶ 5, Feb. 2, 2010.) In a later deposition, Schoenenberger, after asserting that he was the CFO for Cavitec AG and is now the sole remaining officer, stipulates that Santex Nonwoven is a trademark of Cavitec AG and is a title of a product line. (DE 31-1, Schoenenberger Aff. ¶¶ 5-6,

Apr. 8, 2010.) He further explains that Cavitec AG presently directs its correspondence to the offices of Santex AG because it no longer has employees or offices as a result of its liquidation status, so all communication are sent to him as the court appointed liquidation officer. (DE 31-1, Schoenenberger Aff. ¶ 7, Apr. 8, 2010.) Santex AG denies that their common membership with Cavitec AG in Santex Group is sufficient to create personal jurisdiction. (DE 31, Santex AG Reply 1.)

Santex AG insists that it has never done business nor maintained any contacts in Indiana or with the Vita Non-Wovens, and is, therefore, not subject to the personal jurisdiction of this forum. (DE 24, Santex AG Br.1.) Having not filed for incorporation, maintained a phone number, bank account, or advertised in Indiana, Santex AG denies having any business connection to this state. (DE 24-1, Schoenenberger Aff. ¶¶ 8-9, Feb. 2, 2010.)

While responsible for the initial design of the Santatherm oven, Santex AG asserts that it has been twenty years since it was involved with the product, and that the oven has been under the exclusive control of Cavitec AG for the last fifteen years. (DE 24, Santex AG Br. 2.) Santex AG asserts that it has no employees, agents, or offices in the United States and had no part in placing the product in the stream of commerce. (DE 24, Santex AG Br. 2.)

Contrary to Plaintiff's assertion of a "true and accurate" copy of the purchase order, Santex AG contends that the original letterhead, removed in Plaintiff's exhibit, showed that Cavitec AG negotiated and sold the product. (DE 31, Santex AG Reply 1-2.) Furthermore, Santex AG alleges that the use of their name in the purchase order was a typo from the original forms transferred to Cavitec AG over ten years ago and that the use of "Santex Engineer" refers to Santex Group, not Santex AG. (DE 31, Santex AG Reply 2, 6 n.3.) Schoenenberger supports

6

this assertion by stating that Santex AG has never reserved a security interest in any of the Santatherm ovens (DE 31-1, Schoenenberger Aff. ¶ 4, Apr. 8, 2010.) Specifically, Schoenenberger contends that Cavitec AG's records confirm that Cavitec AG engineers, with no connection to Santex AG, installed the product at issue. (DE 31-1, Schoenenberger Aff. ¶ 8, Apr. 8, 2010.) Furthermore, Schoenenberger asserts that Santex AG did not participate in the sale and received none of the resulting funds. (DE 31-1, Schoenenberger Aff. ¶ 9, Apr. 8, 2010.) In regards to the Johnson Affidavit, Santex AG moves that it be stricken for its conclusory statements, inadequate foundation, and authentication of the inaccurate purchase order. (DE 31, Santex AG Reply 2-5.)

Without the necessary systematic and continuous presence or minimal contacts, Santex AG contends that neither general nor specific personal jurisdiction can be established (DE 24, Santex AG Br. 5.)

C.  **Standard of Review**

"The plaintiff has the burden of establishing personal jurisdiction" when a motion to dismiss is filed by the defendant. *Tamburo v. Dworkin,* 601 F.3d 693, 700 (7th Cir. 2010). When the motion is decided without an evidentiary hearing, the plaintiff need only present a *prima facie* case of personal jurisdiction. *Id.* All facts presented in the Complaint are to be assumed true unless disputed by the defendant, and all conflicts in the record are to be resolved in favor of the plaintiff. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

A federal court's personal jurisdiction is determined by the laws of its forum state. *Tamburo*, 601 F.3d at 700. Therefore, jurisdiction must be established first under the governing

7

state law and then under Constitutional limitations. *Id.* Indiana has a long-arm statute allowing jurisdiction so long as it is not inconsistent with the Due Process Clause of the Fourteenth Amendment. Ind. R. Trial P. 4.4(a). Accordingly, consideration must be given whether exercising personal jurisdiction complies with due process.

Personal jurisdiction is limited regarding nonresidents to allow potential defendants to restrict the scope of their possible liability. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004). Therefore, courts must consider whether "the defendant's conduct . . . with the forum State [is] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Under the Due Process Clause, defendant must have adequate "minimum contacts" with Indiana to the degree that "notions of fair play and substantial justice" are satisfied. *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). Plaintiff can demonstrate reasonable anticipation and adequate contacts by showing that defendant "purposefully availed itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Personal jurisdiction can be established in two forms. General jurisdiction exists for a nonresident when the defendant maintains "continuous and systematic" contacts with the forum state. *Perkins v. Benquet Consol. Mining Co.*, 342 U.S. 437, 438 (1952). Specific jurisdiction can be established if the "suit aris[es] out of or [is] related to the defendant's contacts with the forum [state]." *Helicopter Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9 (1984).

**D.     Conclusion**

After reviewing the above record, the court concludes that an evidentiary hearing is

required to resolve the questions of fact in order to ascertain whether it has jurisdiction over Santex AG.

The Court sets the evidentiary hearing for July 9, 2010, at 10:30 am.

SO ORDERED on June 14, 2010.

  s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE